IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNIVERSAL SAFETY RESPONSE,  )
INC.,                       )
                            )
    Plaintiff,              )
                            )    CIVIL ACTION NO.
    v.                      )      2:11cv122-MHT
                            )          (WO)
GOVERNMENT TECHNICAL        )
SERVICES, LLC, et al.,      )
                            )
    Defendants.             )
```

OPINION AND ORDER

Relying on diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332, plaintiff Universal Safety Response, Inc. (USR) has filed this lawsuit against defendants Government Technical Services, LLC (GTS), ServisFirst Bank, Inc., Aaron Terry, Joseph Terry, and Michelle Vandergrift, asserting the following claims and theories based on Alabama law: breach of contract, open account, promissory fraud, and equitable lien. This case is now before the court on USR's motion, filed on February 22, 2011, for a pre-hearing writ of seizure pursuant to

Federal Rule of Civil Procedure 64 and Alabama Rule of Civil Procedure 64.  Upon consideration of the entire record, the court is of the opinion that USR's request for immediate relief should be granted.

When addressing a motion for a writ of seizure, Federal Rule of Civil Procedure 64 directs federal district courts to look to state substantive and procedural law. As a preliminary matter, it is not immediately clear whether USR properly filed a motion for a writ of seizure or whether it should have filed a motion for a writ of attachment, as it seeks only money from defendant GTS and not personal property or chattels. Writs of attachment are subject to the provisions of Rule 64 as well.  See Ex parte Boykin, 568 So.2d 1243, 1244 (Ala. Civ. App. 1990) ("[W]e also find that Rule 64 of the Alabama Rules of Civil Procedure is applicable to the issuance of prejudgment attachments").  However, the requirements of Ala. R. Civ. P. 64 are superimposed upon the statutory requirements for prejudgment remedies,

including those for attachment.  Ala. R. Civ. P. 64 committee comments on 1973 adoption; Ex parte Boykin, 568 So.2d at 1244.  In Alabama, these requirements include showing that the defendant is properly subject to a writ of attachment.  1975 Ala. Code 1975 § 6-6-42.  In addition, a plaintiff must meet certain procedural requirements before a court may grant a writ of attachment, such as submitting an "oath" verifying "the amount of the debt or demand and that it is justly due," and "that one of the causes enumerated in Section 6-6-42 exists and that the attachment is not sued out for the purpose of vexing or harassing the defendant."  1975 Ala. Code § 6-6-44.  USR has not fulfilled these additional requirements in order to obtain a writ of attachment.  If USR's motion, although labeled a motion for writ of seizure, is in essence a motion for writ of attachment, it must be denied.

   The money USR seeks is held by ServisFirst Bank in an escrow account.  The question for the court, therefore,

is whether an escrow account, although consisting of money, is still the type of property that should be subject to a seizure writ. Alabama courts have addressed, in another context, the question of if and when 'money' may be treated as 'property.' They have held that, while money generally may not be the subject of an action for conversion of property, there is an exception "if the cash at issue is specific money capable of identification." Covington v. Exxon Co., U.S.A., 551 So.2d 935, 938 (Ala. 1989) (internal quotation marks and citation omitted). See also U. S. Fidelity and Guaranty Co. v. Bass, 619 F.2d 1057, 1060 (5th Cir. 1980).[1] "The money need not be specific bills or notes squirrelled away in paper bags ... to be sufficiently identified," Estate of Jackson v. Phillips Petroleum Co., 676 F.Supp. 1142, 1147 (S.D. Ala. 1987), and funds in an escrow account have been deemed segregated enough to qualify as

---

1. The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

specific and identifiable. Willingham v. United Ins. Co. of America, 628 So.2d 328, 333 (Ala. 1993). This court believes the logic that underlies the treatment of money as property in the context of conversion applies in the context of writs of seizure as well.

Here, the federal government deposited payments on a contract with GTS into an escrow account, and that money was then to be disbursed to the entities performing work on the contract, including subcontractors such as USR. The court finds that the money in the escrow account was therefore "specific money capable of identification." Covington, 551 So.2d at 938. As such, the court will treat this money as 'property,' and allow USR's motion to be treated as a motion for a writ of seizure as labeled, such that USR need not fulfill the additional statutory requirements for a writ of attachment.

The relevant portion of the Alabama Rules of Civil Procedure governing motions for writ of seizure requires USR to file an affidavit based on personal knowledge

setting forth four points of information: (1) a description of the property involved; (2) a statement of USR's title or right to the property; (3) a statement explaining the defendant's alleged wrongful detention of the property; and (4) a statement alleging specific facts in support of the contention, if any, "that there is a risk of concealment, transfer or other disposition of or damage to the property to the injury of the plaintiff." Ala. R. Civ. P. 64(b)(1)(D).

Rule 64(b)(2)(A) then prescribes that, "The court, without delay, shall examine the complaint, the application and supporting affidavit and its attachments and any further showing offered by the plaintiff in support of the plaintiff's right to the immediate possession of the property."  The court will issue a <u>pre-hearing</u> writ of seizure on the plaintiff's behalf only if "the risk of concealment, transfer or other disposition of or damage to the property by permitting it to remain in the possession of the defendant between the filing of

the action and the time of a hearing is real." Ala. R. Civ. P. 64(b)(2)(B). In this case, USR has made such a showing.

As required by Rule 64(b)(1), USR has, in support of its motion, filed an affidavit from its Executive Vice President, Wesley Foss. Foss adequately describes the funds to be seized--contract payments made by the federal government "as payment for the work performed under Prime Contract W912DY-05-D-0020, awarded to defendant [Government Technical Services] by the United States Army Engineering and Support Center of the Corps of Engineers to perform various construction work at Fort Rucker." Foss Aff. ¶ 2 (Doc. No. 2-1). Foss also avers that USR is due these funds because it has completed work for GTS as a subcontractor on the W912DY-05-D-0020 contract, but has not received full payment for its work and materials. The complaint and invoices submitted by USR confirm that it has completed work for GTS in the amount of $ 3,194,088.36 and is still owed $ 624,576.81. Foss

states that GTS, through ServisFirst Bank, the trustee for the escrow account holding the federal contract funds, has wrongfully detained the monies owed USR.

Finally, and most importantly for the court's consideration of this matter, USR alleges that there is "a risk of concealment, transfer, or other disposition" of the funds, as required by Rule 64. Foss states that, "There is a very real risk that if the funds are distributed to GTS, USR will go unpaid for the material and labor it supplied for the Project." Foss Aff. ¶ 5 (Doc. No. 2-1). To support this contention, he notes that "GTS has repeatedly and falsely represented to USR that it wold be paid the outstanding balance for its work." Id. The sum of $ 237,014.00 of the outstanding payments USR claims was invoiced prior to the creation of the escrow account, such that GTS should have already received those funds from the federal government. The remaining $ 387,562.81 owed USR is for labor and materials USR has provided since the escrow account was

8

created. While the escrow account is under the trusteeship of a third party, such that those funds may appear to be more secure, USR alleges that it has received no payments from that account, although it submitted invoices to GTS months ago. It believes those funds are at risk of "concealment, transfer or other disposition" because "USR has no assurance that GST [sic] is providing accurate information or invoices to ServisFirst Bank for proper distribution from the escrow account." Id. Consequently, while GTS is not in direct control of the escrow funds, based on the declaration of Foss, it still has ultimate control over who receives payments from that account and in what amount. GTS has the ability to withhold payments due USR by not submitting invoices to ServisFirst, and to choose to pay the monies owing to USR to other subcontractors or to itself. This presents a risk that the money needed to

pay USR could be distributed before this case is resolved.[2]

Thus, based on the materials provided, the court finds that the risk of injury is sufficiently "real" in this case to justify the issuance of a pre-hearing writ of seizure, according to the requirements set out by Alabama Rule of Civil Procedure 64(b)(2)(B).  USR has requested that the following be seized: "$ 624,576.81 of federal contract funds coming into the possession of ServisFirst Bank according to the equitable lien in favor

---

    2. One of the emails from defendant Aaron Terry to Foss, submitted by USR, states that the escrow account "provided clear security for your future payments" and that "the remaining balance on the project is more than 3 times the remainder of your contract." Doc. No. 1-5. This would seem to indicate that there are sufficient funds in the escrow account to guarantee USR payment without this court issuing a pre-judgment order. However, that email was sent on March 5, 2010. USR filed its suit on February 22, 2011, which leads to the conclusion that almost a year later, the escrow account has not provided sufficient security for USR to receive its payments.  In addition, it is likely that the escrow account no longer contains more than three times the amount of money owed to USR.  Thus, the court still finds sufficient evidence to indicate that there is a risk that the money allegedly owed to USR will be transferred before USR can recover.

of the Plaintiff," and "$ 624,576.81 of federal contract funds coming into the possession of the Defendants GTS, Aaron Terry, Joseph Terry, and/or Michele Vandergrift, but only to the extent said sums are not otherwise seized from the ServisFirst Bank escrow account."  Mot. ¶ 4 (Doc. No. 2).  However, because the court finds that only the funds contained in escrow are properly subject to a writ of seizure, the writ is granted only as to the federal contract funds in possession of ServisFirst Bank, as trustee for the escrow account.

Rule 64(b)(2)(B) further provides that the court shall provide the following language in its seizure order:

> "[T]he defendant is entitled, as a matter of right, to a pre-judgment hearing on the issue of dissolution of the writ if a written request for hearing is served on counsel for the plaintiff within five (5) days from the date of seizure of the property by the sheriff or other duly constituted officer. If such a request is made, the writ shall expire upon the fifteenth day from said date of seizure unless the court, after hearing, continues the

> order in effect. The expiration of the writ shall not prejudice the right of the plaintiff to a reinstatement thereof but any such reinstatement shall not be made without notice and hearing. If no request for a hearing is made within the five- (5-) day period, the writ shall remain in effect pending further order of the court but, the court, in its discretion, may hear a request for dissolution of the writ although said request is served more than five (5) days from the date of seizure."

This order will therefore include this language.

***

It is therefore the ORDER, JUDGMENT and DECREE of the court as follows:

(1) Plaintiff Universal Safety Response, Inc.'s ex parte motion for writ of seizure, filed February 22, 2011 (Doc. No. 2), is granted as to the escrow account held by defendant ServisFirst Bank, Inc.

(2) A writ of seizure against defendants Government Technical Services, LLC, ServisFirst Bank, Inc. Aaron Terry, Joseph Terry, and Michelle

Vandergrift in the amount of $ 624,576.81 will issue, albeit only as to the escrow account held by defendant ServisFirst Bank, Inc.

DEFENDANTS GOVERNMENT TECHNICAL SERVICES, LLC, SERVISFIRST BANK, INC., AARON TERRY, JOSEPH TERRY, AND MICHELLE VANDERGRIFT ARE "ENTITLED, AS A MATTER OF RIGHT, TO A PRE-JUDGMENT HEARING ON THE ISSUE OF DISSOLUTION OF THE WRIT IF A WRITTEN REQUEST FOR HEARING IS SERVED ON COUNSEL FOR THE PLAINTIFF WITHIN FIVE (5) DAYS FROM THE DATE OF SEIZURE OF THE PROPERTY BY THE SHERIFF OR OTHER DULY CONSTITUTED OFFICER. IF SUCH A REQUEST IS MADE, THE WRIT SHALL EXPIRE UPON THE FIFTEENTH DAY FROM SAID DATE OF SEIZURE UNLESS THE COURT, AFTER HEARING, CONTINUES THE ORDER IN EFFECT. THE EXPIRATION OF THE WRIT SHALL NOT PREJUDICE THE RIGHT OF THE PLAINTIFF TO A REINSTATEMENT THEREOF BUT ANY SUCH REINSTATEMENT SHALL NOT BE MADE WITHOUT NOTICE AND HEARING. IF NO REQUEST FOR A HEARING IS MADE WITHIN THE FIVE- (5-) DAY PERIOD, THE WRIT SHALL REMAIN IN EFFECT PENDING FURTHER ORDER OF THE COURT BUT,

**THE COURT, IN ITS DISCRETION, MAY HEAR A REQUEST FOR DISSOLUTION OF THE WRIT ALTHOUGH SAID REQUEST IS SERVED MORE THAN FIVE (5) DAYS FROM THE DATE OF SEIZURE."** **Ala.R.Civ.P 64(b)(2)(B) (capitalization added).**

**DONE, this the 1st day of March, 2011.**

                                      **/s/ Myron H. Thompson**
                                **UNITED STATES DISTRICT JUDGE**